**Angel Benita PIEDRA, Plaintiff,**

v.

**Page TRUE, et al., Defendants.**

**No. CIV. A. 98–3046–GTV.**

United States District Court,
D. Kansas.

Sept. 27, 2001.

Thomas R. Fields, Brian L. Leininger, Kansas City, KS, Angel Benita Piedra, Beaumont, TX, for plaintiff.

David D. Plinsky, Jackie A. Rapstine, Mary K. Ramirez, Office of United States Attorney, Topeka, KS, for defendant.

### MEMORANDUM AND ORDER

G. THOMAS VANBEBBER, Senior District Judge.

This case is before the court on Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 21). The case involves claims by plaintiff Angel Benita Piedra that defendants, prison officers, physically assaulted him while he was incarcerated at the United States Penitentiary in Leavenworth, Kansas. Plaintiff alleges that the assaults violated his constitutional right to be free from cruel and unusual punishment. Defendants respond that they were acting with reasonable force made necessary by plaintiff's disruptive behavior. Defendants argue, among other things, that the court should grant summary judgment because they are entitled to qualified immunity regarding plaintiff's claims. For the reasons stated below, the court concludes that defendants are entitled to qualified immunity and grants defendants' motion.[1]

## I. FACTUAL BACKGROUND

The following facts are taken from the summary judgment record and are uncontroverted. Defendants submitted a statement of material facts with their motion for summary judgment, and plaintiff did not controvert any of those facts or offer any additional facts in his response. However, plaintiff attached an affidavit to his verified complaint, and the court has considered the facts contained in the com-

---

1. Also pending before the court are Defendants' Motion for Order of Dismissal or, in the Alternative, for Order Granting Summary Judgment (Doc. 33) and plaintiff's Motion for Assignment of Case for Trial Pursuant to Fed. R.Civ.P. Rule 40 in Conjunction with Fed. R.Civ.P. Rule 43 (a,d,e) Taking of Testimony (Doc. 40). In light of the court's ruling with respect to document 21, both of these motions are denied as moot.

plaint and affidavit to the extent that they controvert any facts alleged by defendants.

On September 24, 1996, plaintiff was incarcerated at the United States Penitentiary in Leavenworth, Kansas. The evening of September 24, plaintiff attempted to assault prison staff with a telephone. He also barricaded his cell by securing a bed sheet to the cell bars. When prison officers entered his cell, they found a half gallon of homemade wine. The officers handcuffed plaintiff and took him from his cell to the Special Housing Unit ("SHU"). Plaintiff alleges that while he was handcuffed, the officers beat him and kicked him in the face. The officers admit that during the walk to SHU, they used force to restrain plaintiff because plaintiff continued to display disruptive behavior, including kicking them, spitting at them, and verbally assaulting them. Once plaintiff arrived at SHU, he continued to struggle and was placed in ambulatory restraints. During the September 24 struggle, plaintiff received a laceration on his left eyelid which required stitches. Plaintiff alleges that he also received lacerations "all over" his body, but the medical records only indicate a bruise on his left shoulder. Plaintiff also claims that his vision is permanently damaged as a result of the officers' actions.

## II. DISCUSSION

■ Plaintiff's complaint (which was drafted pro se) appears to allege a cause of action for violation of the Eighth Amendment's prohibition of cruel and unusual punishment.[2] Such a claim is the only claim addressed in plaintiff's response to defendants' summary judgment motion

(which was drafted by plaintiff's appointed counsel). This opinion therefore will only address qualified immunity as it applies to plaintiff's Eighth Amendment claim.

■ Qualified immunity shields an individual government official performing discretionary functions from liability for civil damages insofar as his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butler v. City of Prairie Village*, 172 F.3d 736, 745 (10th Cir.1999). To determine whether a government official is entitled to qualified immunity, the court first must decide whether the plaintiff has " 'asserted a violation of a constitutional right at all.' " *Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir.1995) (quoting *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). If the plaintiff has made a valid claim, then the court must evaluate whether the asserted right was clearly established such that a reasonable person in the official's position would have known that his or her conduct violated that right. See *id.*; *Merkel v. Leavenworth County Emergency Med. Servs.*, No. 98–2335–JWL, 2000 WL 127266, at *10 (D.Kan. Jan. 4, 2000).

■ The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on [a] particular [officer's] conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply

---

**2.** Plaintiff's affidavit attached to his complaint also mentions the Fourth and Fourteenth Amendments. Plaintiff's assertion that the rights guaranteed by these amendments have been violated is inapposite. An allegation of excessive force by a prisoner should be analyzed under Eighth Amendment jurispru-

dence, not Fourth Amendment jurisprudence. See *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Furthermore, the Fourteenth Amendment protects against deprivations by a state. Plaintiff's complaint names only federal employees.

to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

■ *Saucier v. Katz,* —— U.S. ——, ——, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272 (2001). The Supreme Court recently clarified that, in excessive force cases, the inquiry whether a defendant is entitled to qualified immunity should be distinct from the inquiry whether a defendant used excessive force. See generally *Saucier,* —— U.S. ——, 121 S.Ct. 2151, 150 L.Ed.2d 272. In accordance with the Supreme Court's instruction, this court now considers defendants' claim of qualified immunity before addressing the merits of plaintiff's case.

■ Prison officers are given some latitude in dealing with disruptive prisoners. See *Whitley v. Albers,* 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ("[I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used."). The Supreme Court recently stated that "[i]f an officer reasonably, but mistakenly believed that a [prisoner] was likely to fight back ... the officer would be justified in using more force than in fact was needed." *Saucier,* —— U.S. at ——, 121 S.Ct. at 2158.

■ On the other hand, prison officers may not use a prison disruption as an excuse for exercising unfettered and unjustified force. Prison officers abuse their authority and violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment when they use excessive force which results in the " 'unnecessary and wanton infliction of pain.' " *Hudson v. McMillian,* 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting *Whitley,* 475 U.S. at 319, 106 S.Ct. 1078). When prison officers are threatened with a disturbance, the test for whether force involves the "unnecessary and wanton infliction of pain" turns on " 'whether [the] force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " *Id.* at 6, 112 S.Ct. 995 (quoting *Whitley,* 475 U.S. at 320–21, 106 S.Ct. 1078) (additional citations omitted).

■ In the instant case, the only evidence before the court arguably suggesting that the prison officers were acting maliciously or sadistically is plaintiff's assertion that they beat and kicked him while he was handcuffed. Plaintiff's conclusory allegations of being "beaten" are too general to establish that a constitutional violation occurred and are not supported by the medical records. Furthermore, plaintiff's allegations must be considered in light of the prison officers' numerous affidavits stating that plaintiff was swinging a telephone at them and kicking, spitting, and verbally assaulting them. Based on plaintiff's violent acts, the prison officers were justified in assuming that plaintiff would "fight back" in retaliation for any force used by the officers.

The Tenth Circuit recently issued an unpublished opinion with facts similar to those in the instant case. In *Cruz v. Webb,* No. 99–4107, 2000 WL 531626 (10th Cir. May 3, 2000), a prisoner was on "dry cell status," where he was held in a cell without a toilet because he was suspected of smuggling contraband into the prison. 2000 WL 531626, at *1. When the prisoner was ready to defecate, he was given a bucket so that officers could search for

contraband. See *id.* After the prisoner finished defecating, he flushed something down a toilet in a breach of discipline. See *id.* When the prison officers ordered him to get against a wall, the prisoner hesitated, and the officers sprayed Lysol in his direction. See *id.* at *2. Once the officers handcuffed the prisoner, they pushed him into a wall, where the prisoner hit his head and was knocked unconscious. See *id.* The Tenth Circuit noted that "the rapidly developing set of events required the officers to make quick decisions to restore discipline." *Id.* The Tenth Circuit affirmed the district court's granting of summary judgment, stating that the "[prisoner's] evidence [did] not show that the officers acted other than in a good-faith effort to restore discipline. . . ." *Id.* at *3. As in Cruz, plaintiff has failed to present any evidence which would show that the officers were not acting in a good-faith effort to restore discipline. Plaintiff did not provide the court with any evidence in support of his response to defendants' summary judgment motion, so the court is left to consider only plaintiff's verified complaint and the attached affidavit. Based on these documents, plaintiff is unable to establish that his constitutional right to be free from cruel and unusual punishment has been violated.

■ Even if the court were to conclude that plaintiff has established a constitutional violation based upon the uncontroverted facts, plaintiff cannot defeat the second prong of the qualified immunity defense. Under Tenth Circuit law, it is not clear that prison officers may not use force on a combative inmate even after that inmate is handcuffed. A reasonable officer could have believed that plaintiff

remained a threat to his or others' safety, particularly since the officers' affidavits state that plaintiff remained combative even as they escorted him down the hall. The law is clearly established that officers may use more force than necessary when they reasonably expect that a prisoner will fight back. See *Saucier*, —— U.S. at ——, 121 S.Ct. at 2158. Accordingly, the court concludes that defendants are entitled to qualified immunity.[3]

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion for summary judgment (Doc. 21) is granted. The motions contained in documents 33 and 40 are denied as moot.

The case is closed.

Copies of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**

---

**3.** The court notes that one defendant, Page True, has been sued for not disciplining the officers who allegedly beat plaintiff. Although this opinion does not address the allegations against defendant True individually, the court concludes that he is also entitled to qualified immunity because there was no constitutional violation. Consequently, there was no reason he should be expected to discipline the officers.